1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOHN COZY,                                )
                                          )
                Petitioner,               )          3:09-cv-0250-RCJ-WGC
                                          )
vs.                                       )          **ORDER**
                                          )
JACK PALMER, *et al.*,                    )
                                          )
                Respondents.              )
_____/

        This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by John Cozy, a Nevada state prisoner.  This matter comes before the Court on the merits of the petition.

**I. Background and Procedural History**

        On March 23, 2004, petitioner and two co-defendants were charged with: Count I, conspiracy to commit larceny, and Count II, grand larceny.  Petitioner was also charged with Count III, possession of credit or debit card without cardholder's consent and Count VI, possessing personal identifying information of another.  (Exhibit 8).[1]  The State also filed a notice of intent to seek habitual criminal status against petitioner.  (Exhibit 8).

_____

        [1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 14-17.

1    The defendants' trial commenced on August 5, 2004.[2]  (Exhibit 12).  During trial, the State

2    amended the information, dismissing Count IV against petitioner.  (Exhibit 11).

3    On August 6, 2004, the jury found petitioner guilty of Counts I, III, and III.  (Exhibit 16).  On

4    Count I, petitioner was sentenced to 12 months in county jail.  (Exhibit 22, at p. 5).  The court

5    adjudicated petitioner a habitual felon pursuant to NRS 207.010(b).  (Exhibit 22).  On Count II,

6    petitioner was sentenced 10 years to life in prison, concurrent with Count I.  (*Id.*)  On Count III,

7    petitioner was sentenced 10 years to life, concurrent with Count II.  (*Id.*).  The judgment of

8    conviction was entered on October 18, 2004.  (Exhibit 24).

9    Petitioner appealed the judgment of conviction.  (Exhibits 25 and 27).  On March 28, 2006,

10   while his direct appeal was still pending, petitioner filed a post-conviction habeas petition in the state

11   district court.  (Exhibits 61, 62).  The state district court never ruled on petitioner's first state habeas

12   petition.

13   On September 12, 2006, petitioner filed his opening brief on direct appeal in the Nevada

14   Supreme Court.  (Exhibit 81).  Petitioner presented three issues on direct appeal: (1) defendant's

15   Fourteenth Amendment rights were violated when he was compelled to stand trial in jail attire; (2)

16   the evidence was insufficient; and (3) prosecutorial misconduct denied petitioner a fair trial.

17   (Exhibit 81).  On June 8, 2007, the Nevada Supreme Court affirmed petitioner's judgment of

18   conviction.  (Exhibit 87).  Remittitur issued on July 5, 2007.  (Exhibit 90).

19   On September 19, 2007, petitioner filed a second state post-conviction habeas petition, in

20   which he raised three grounds for relief.  (Exhibit 91).  On December 18, 2007, the state district

21   court denied petitioner's second habeas petition.  (Exhibit 94).  Petitioner appealed.  (Exhibit 96).

22

23

24   _____

25       [2] On the first day of trial, defendants Childress and Shefield pleaded guilty and were dismissed from the case.  (Exhibit 12, at pp. 7-12 (Shefield) and pp. 63-66 (Childress)).

26
                                                    2

1    On February 28, 2008, petitioner filed his third post-conviction habeas petition in the state

2 district court. (Exhibit 103). On June 10, 2008, the state district court summarily dismissed the third

3 habeas petition. (Exhibit 104). Petitioner appealed. (Exhibit 106).

4    On March 10, 2009, the Nevada Supreme Court consolidated petitioner's appeals from the

5 denial of his second and third state habeas petitions. (Exhibit 110, at p. 1). The Nevada Supreme

6 Court affirmed the district court's denial of petitioner's second and third state habeas petitions.

7 (Exhibit 110). Remittitur issued on April 14, 2009. (Exhibit 112).

8    This Court received petitioner's federal habeas petition on May 14, 2009. (ECF No. 1). The

9 Court directed the petition to be filed, by order entered on June 22, 2009. (ECF No. 3). The petition

10 raises three grounds containing several sub-claims. (ECF No. 4). Respondents previously filed a

11 motion to dismiss the petition. (ECF No. 13). By order filed August 24, 2010, this Court granted in

12 part, and denied in part, the motion to dismiss. (ECF No. 24). The Court dismissed with prejudice

13 Grounds 1(D), 2(D), 2(E), and Ground 3 of the federal petition. The Court also dismissed with

14 prejudice the equal protection claims of Grounds 1(A), 1(B), and 1(C). (*Id.*). The Court directed

15 respondents to file an answer to the remaining grounds of the petition, which include the due process

16 claims in Grounds 1(A), 1(B), and 1(C), as well as Grounds 2(A), 2(B), 2(C), and 2(F). (*Id.*).

17    Respondents have filed an answer to the remaining grounds of the petition. (ECF No. 27).

18 Petitioner has filed a reply to the answer. (ECF No. 34). The Court now reviews the merits of the

19 remaining grounds of the petition.

20 **II. Federal Habeas Corpus Standards**

21    The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

22 provides the legal standard for the Court's consideration of this habeas petition:

23        An application for a writ of habeas corpus on behalf of a person
         in custody pursuant to the judgment of a State court shall not be
24        granted with respect to any claim that was adjudicated on the merits in
         State court proceedings unless the adjudication of the claim –

25

26
                                            3

1

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

5   The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

6   in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

7   to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

8   decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

9   § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

10  Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

11  a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

12  Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

13  U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

14      A state court decision is an unreasonable application of clearly established Supreme Court

15  precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

16  governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

17  principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

18  529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

19  than merely incorrect or erroneous; the state court's application of clearly established federal law

20  must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

21      In determining whether a state court decision is contrary to, or an unreasonable application of

22  federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501

23  U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert.*

24  *denied*, 534 U.S. 944 (2001).  Moreover, "a determination of a factual issue made by a State court

25

26

4

1  shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

2  presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

3  **III.  Discussion**

4      **A.  Ground 1(A)**

5      Petitioner alleges that his due process right to a fair trial was violated because he was

6  compelled to stand trial in jail attire.  (ECF No. 4, at pp. 3-4).  The Nevada Supreme Court ruled on

7  this issue, as follows:

8          Cozy next contends that his right to a fair trial was violated because he
           was compelled to stand trial in identifiable prison clothes.  We

9          disagree.  Although Cozy was wearing his prison-issue blue trousers
           during trial, the trousers were turned inside out so that the prison

10         stenciling could not be seen.  Cozy also wore a plain, unidentifiable
           shirt.  Although Cozy was wearing prison-issue socks and shoes, there

11         were no visible markings that identified them as prison attire.  Under
           the circumstances, we conclude that nothing in the record suggests that

12         the clothes that Cozy was wearing were readily identifiable to jurors as
           prison attire, and we conclude that appellant was not prejudiced.

13 (Exhibit 87, at pp. 2-3) (footnotes omitted).  The Nevada Supreme Court applied the correct federal

14 standard, citing *Estelle v. Williams*, 425 U.S. 501, 512 (1976) (finding constitutional error where

15 defendant appeared in trial clothes that were distinctly marked as "prison issue").  (Exhibit 87, at p.

16 2, n.2).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).

17 Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was

18 contrary to, or involved an unreasonable application of, clearly established federal law, as

19 determined by the United States Supreme Court, or that the ruling was based on an unreasonable

20 determination of the facts in light of the evidence presented in the state court proceeding.  This Court

21 denies habeas relief as to Ground 1(A).

22 / / / / / / / / / /

23 / / / / / / / / / /

24 / / / / / / / / / /

25     **B.  Ground 1(B)**

26

1    Petitioner claims that his due process right to a fair trial was violated because there was

2   insufficient evidence to support his convictions for conspiracy to commit larceny, grand larceny, or

3   possession of a credit card without the cardholder's consent. (ECF No. 4, at pp. 4-6).

4    When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the

5   court reviews the record to determine "whether, after viewing the evidence in the light most

6   favorable to the prosecution, any rational trier of fact could have found the essential elements of the

7   crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*,

8   207 F.3d 557, 563 (9th Cir. 2000). The *Jackson* standard does not focus on whether a correct guilt or

9   innocence determination was made, but whether the jury made a rational decision to convict or

10  acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Under the *Jackson* standard, the prosecution

11  has no obligation to rule out every hypothesis except guilt. *Wright v. West*, 505 U.S. 277, 296 (1992)

12  (plurality opinion); *Jackson*, 443 U.S. at 326; *Schell*, 218 F.3d at 1023. *Jackson* presents "a high

13  standard" to habeas petitioners claiming insufficiency of the evidence. *Jones v. Wood*, 207 F.3d 557,

14  563 (9th Cir. 2000).

15   Sufficiency claims are limited to a review of the record evidence submitted at trial. *Herrera*,

16  506 U.S. at 402. Such claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at

17  324, n.16). The reviewing court must respect the exclusive province of the fact-finder to determine

18  the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from

19  proven facts. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). The district court must

20  assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even if the

21  determination does not appear on the record, and must defer to that resolution. *Jackson*, 443, U.S. at

22  326.

23  //////////

24  //////////

25  **1. Convictions for Conspiracy and Grand Larceny**

26

1    In Nevada, conspiracy is "an agreement between two or more persons for an unlawful

2  purpose." *Thomas v. State*, 114 Nev. 1127, 1143, 967 P.2d 1111, 1122 (1998); Nev. Rev. Stat.

3  199.480 ("conspiracy occurs "[w]henever two or more persons conspire . . . to accomplish any

4  criminal or unlawful purpose . . . ."). Conspiracy is seldom demonstrated by direct proof and is

5  usually established by inference from the conduct of the conspirators. *Thomas*, 114 Nev. at 1143,

6  967 P.2d at 1122. A person commits the crime of grand larceny when that person "[i]ntentionally

7  steals, takes and carries away, lead away or drives away . . . personal goods or property, with the

8  value of $250 or more, owned by another person." Nev. Rev. Stat. 205.220.

9    At trial, the victim testified that she was playing video poker on March 1, 2004, at the Luxor

10 casino in Las Vegas, Nevada. (Exhibit 12C, at p. 80). When she sat down to play video poker, the

11 victim placed her purse in the machine's coin receptacle. (Exhibit 12C, at p. 87). Inside the victim's

12 purse were her driver's license, Mastercard credit card, insurance cards, and approximately one

13 thousand dollars in cash. (Exhibit 12C, at pp. 92-93, 96). As she played video poker, the victim was

14 approached by two African-American males later identified as Childress and Shefield. (Exhibit 12C,

15 at pp. 81-84). Childress asked if he could shake her hand in return for giving him directions to the

16 buffet. (Exhibit 12C, at pp. 84-85). The victim agreed to do so, but pulled her hand away when

17 Childress shook her hand for an unusually long and socially unacceptable time. (Exhibit 12C, at pp.

18 85-86). A few moments later, the victim noticed that her purse was missing and informed a Luxor

19 employee that she believed she had been robbed. (Exhibit 12C, at pp. 88-89).

20   After the victim reported her purse missing, William Miernicki, a casino security guard,

21 received a radio call informing him that two black males, between the ages of 40-50 years old, had

22 taken a purse from a hotel guest. (Exhibit 12C, at p. 109). Miernicki testified that he went to the

23 casino's 30-minute parking lot where he observed three black males in a blue Suzuki Samurai drive

24 away. (*Id.*). Miernicki testified that this vehicle was not parked in the lot fifteen minutes before the

25 radio call. (*Id.*). Miernicki followed the vehicle to the end of the casino property and instructed a

26

1   casino dispatcher to contact the Las Vegas Metro Police Department (LVMPD) with a description of

2   the vehicle.  (Exhibit 12C, at p. 110).

3        With ten minutes of being supplied with a description of the vehicle, Sergeant Victor Dumas

4   of the LVMPD located the Suzuki Samuri and pulled it over at a nearby gas station.  (Exhibit 18A, at

5   p. 19).  Once other officers arrived, including Officer Edward Ortega, the suspects were directed to

6   exit the vehicle.  (Exhibit 18B, at p. 41).  Two of these suspects were subsequently identified by the

7   victim, who had been transported to the scene, as the men who took her purse.  (Exhibit 12C, at pp.

8   90-91).

9        Officer Ortega testified that he conducted a pat-down search on petitioner Cozy, the third

10   suspect, and observed a bundle of papers in Cozy's shirt pocket.  (Exhibit 18B, at pp. 43-44).

11   Among these papers were the victim's California driver's license, credit card, insurance card, and

12   approximately fifty dollars in cash.  (Exhibit 18B, at p. 43).  When asked about the driver's license,

13   petitioner Cozy stated the license belonged to a friend of his in California.  (Exhibit 18B, at p. 44).

14   After conducting similar searches on Childress and Shefield, the officers found more than nine

15   hundred dollars in cash.  (Exhibit 18B, at p. 45).  The police later obtained a casino surveillance

16   video which clearly depicted Shefield taking the taking the victim's purse while Childress distracted

17   her.  (Exhibit 12C, at pp. 100-02).  The discarded purse was later located and returned to the victim.

18   (Exhibit 18B, at pp. 35-37).

19        Trial testimony concerning petitioner's conduct following the taking of the purse provides

20   ample proof of his participation in the crimes of conspiracy to commit larceny and grand larceny.

21   This includes (1) Petitioner was present inside the vehicle with Shefield and Childress shortly after

22   the purse was taken (Exhibit 18B, at pp. 40-42); (2) Petitioner was found in physical possession of

23   the victim's driver's license, credit card, and insurance card (Exhibit 18B, at p. 43); (3) Petitioner

24   lied to police and stated that the driver's license belonged to a friend from California (Exhibit 18B, at

25   p. 44); (4) the victim's purse, absent its valuable items, was discarded shortly after it was stolen

26

1  (Exhibit 18B, at pp. 35-37); (5) the victim's money had been split up between the three suspects

2  (Exhibit 18B, at pp. 35-37); and (6) Petitioner was fleeing the scene of the crime when he and his

3  cohorts were pulled over by police.  (Exhibit 18B, at pp. 40-42).  This evidence was presented to the

4  jury and provided abundant evidence of petitioner's participation in the crimes of conspiracy to

5  commit larceny and grand larceny.  Petitioner's claim is without merit.

6  **2. Conviction for Possession of Credit or Debit Card**

7  Petitioner also asserts that his conviction for possession of a credit or debit card without the

8  cardholder's consent was based on insufficient evidence.  Under Nevada law, a person commits this

9  crime when the person possesses "a credit card or debit card without the consent of the cardholder

10  and with the intent to circulate, use, sell or transfer the credit card."  Nev. Rev. Stat. 205.690.

11  Trial testimony established that petitioner: (1) fled the scene on the crime (Exhibit 18B, at pp.

12  40-42; (2) physically possessed the credit card of the victim (Exhibit 18B, at p. 43); (3) lied to police

13  when questioned about the victim's driver's license and credit card (Exhibit 18B, at p. 44); and (4)

14  along with Shefield and Childress, discarded the victim's purse after removing all items of value

15  (Exhibit 18B, at pp. 35-37).  The evidence at trial showed that petitioner knew the credit card was

16  stolen and intended to use, circulate, sell, or transfer the card.

17  The Nevada Supreme Court found and held as follows:

18       Cozy first contends that the evidence presented at trial was
insufficient to support the jury's finding of guilt.  Our review of the

19  record on appeal, however, reveals sufficient evidence to establish
guilt beyond a reasonable doubt as determined by a rational trier of

20  fact.

21       In particular, we note that Cozy was found shortly after the
victim's purse was stolen, and he was in possession of the victim's

22  driver's license, credit card and insurance card.  Cozy was in a car with
the two individuals who were identified by the victim as having been

23  present when the victim's purse disappeared.  A surveillance video
showed those two individuals distracting the victim and taking her

24  purse.  When questioned by police, Cozy lied and told the police that
the victim's driver's license belonged to a friend of his from

25  California.

26

> The jury could reasonably infer from the evidence presented that Cozy conspired with his co-defendants to steal the victim's purse, that he knew that the credit card was stolen and he intended to use it. It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal, where, as here, substantial evidence supports the verdict.

(Exhibit 87, at pp. 1-2) (footnotes omitted).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  The Nevada Supreme Court applied the correct federal constitutional standard.  (Exhibit 87, at p. 2, n.2 (citing *McNair v. State*, 108 Nev. 53 (1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The Court denies habeas relief as to Ground 1(B).

**C.  Ground 1(C)**

Petitioner claims that his right to due process was violated due to prosecutorial misconduct during closing arguments.  Petitioner alleges that three statements made by prosecutors during closing arguments violated his right to due process.  (ECF No. 4, at pp. 6-10).

In reviewing prosecutorial misconduct claims, the narrow issue that the federal habeas court may consider is whether there was a violation of due process, and not whether there was misconduct under the court's broad exercise of supervisorial power.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  The test is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The court must distinguish ordinary trial error of a prosecutor from that sort of egregious misconduct which amounts to a constitutional violation of due process.  *Smith v. Phillips*, 455 U.S. 209, 221 (1982).  The question before the court is not whether misconduct denied a fair trial, but whether the state court's conclusion was an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1).  *See Frazier v. Huffman*, 343 F.3d 780, 793 (6th Cir. 2003).

10

1    Failure of counsel to object to misconduct implies that counsel did not discern any prejudice.

2  *See Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (while not dispositive, failure to object is

3  relevant on the issue of fundamental fairness).  Where a prosecutorial misconduct claim is waived

4  for failure to object and request an admonition, such failure is a factor in the default of the claim.

5  *Rich v. Calderon*, 187 F.3d 1064, 1070 (9th Cir. 1999).  If a cautionary instruction is given by the

6  trial court, the jury is presumed to follow it.  *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000).

7    In the instant case, petitioner alleges that three statements made by prosecutors during closing

8  arguments violated his right to due process.  First, petitioner alleges that the prosecutor argued that

9  petitioner was the driver of the blue Suzuki Samurai, a fact not in evidence.  On review of the record,

10  the prosecutor did state that petitioner was "driving the get-away car."  (Exhibit 18B, at pp. 53-54).

11  Taken in context, the prosecutor was drawing reasonable inferences from the evidence, not arguing

12  that any specific witness testified that petitioner was the driver.  Moreover, this statement was

13  clarified by the prosecution in rebuttal –  acknowledging that the State could not prove beyond a

14  reasonable doubt that petitioner was driving the vehicle at the time it left the casino or when it was

15  pulled over by police.  (Exhibit 18B, at p. 71).  Jury instruction #15 directed the jury that "whatever

16  counsel may say, you will bear in mind that it is your duty to be governed in your deliberations by the

17  evidence as you understand it and remember it to be . . . ."  (Exhibit 15).  As such, the prosecutor's

18  statement that petitioner was the driver of the vehicle did not constitute misconduct, and any

19  prejudicial effect was remedied through the subsequent clarification by the prosecutor and by jury

20  instruction #15.

21    Second, petitioner alleges that the prosecution committed prejudicial misconduct by

22  expressing a personal belief or opinion in closing argument.  Prosecutor Brian Rutledge stated in

23  rebuttal argument:

24       Who was the driver?  Well, as Mr. Hendricks told you, we know that
        Mr. – because of when the car was parked there, it had been brought
25       there in the last twenty minutes, the other two were in the casino, Mr.
        Cozy had to bring it.

26

11

(Exhibit 18B, at p. 71).  The statement was a reference to what prosecutor Mr. Hendricks stated in the initial closing argument.  The statement was not one of personal belief or opinion.  Petitioner has failed to show any prosecutorial misconduct or prejudice regarding this statement.

Third, petitioner argues that the prosecution committed misconduct by improperly commenting on his choice not to testify at trial.  The prosecutor stated:

> Why is he in the vehicle, the get-away vehicle, out here waiting for these individuals as they come running out, hop in the car and away they go.  Now, he may have a better story if – not just, this is a friend of mine, if those cards had been laying, you know, in the back seat, somewhere on the floor, somewhere else, but they were located on his person inside his shirt pocket.

(Exhibit 18B, at p. 54).  In stating that "he may have a better story," the prosecutor was commenting on the false statement made by petitioner when questioned about the victim's driver's license.  The prosecutor's statement did not comment on petitioner's refusal to testify.  Petitioner has failed to show that the statement constituted prosecutorial misconduct or resulted in prejudice.  Petitioner failed to object to any of the alleged acts of prosecutorial misconduct.  Petitioner has not shown that the alleged acts of prosecutorial misconduct were so prejudicial as to "infect the trial with unfairness making the resulting conviction a denial of due process."  *Donnelly*, 416 U.S. at 643.

The Nevada Supreme Court addressed petitioner's claim of prosecutorial misconduct as follows:

> Finally, Cozy contends that the prosecutor's comments during closing argument constitute prosecutorial misconduct that warrants reversal. Cozy did not object to the prosecutor's comments, and the failure to object to the alleged prosecutorial misconduct precludes appellate consideration absent plain error.  We conclude that Cozy has failed to demonstrate that the prosecutor's comments affected his substantial rights or prejudiced him in any way amounting to reversible plain error.

(Exhibit 87, at p. 3) (footnotes omitted).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal

12

1    law, as determined by the United States Supreme Court, or that the ruling was based on an

2    unreasonable determination of the facts in light of the evidence presented in the state court

3    proceeding.  The Court denies habeas relief as to Ground 1(C).

4           **D.  Ineffective Assistance of Counsel Claims**

5           In Grounds 2(A), 2(B), 2(C), and 2(F), petitioner claims violations of his Sixth Amendment

6    right to the effective assistance of counsel.  (ECF No. 4, at pp. 14-18, 21-22).  Ineffective assistance

7    of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S.

8    668 (1984).  In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of

9    counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she

10   was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient

11   performance prejudiced the defense.  *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing

12   *Strickland,* 466 U.S. at 687).  To establish ineffectiveness, the defendant must show that counsel's

13   representation fell below an objective standard of reasonableness.  *Id.*  To establish prejudice, the

14   defendant must show that there is a reasonable probability that, but for counsel's unprofessional

15   errors, the result of the proceeding would have been different.  *Id.*  A reasonable probability is

16   "probability sufficient to undermine confidence in the outcome."  *Id.*  Additionally, any review of the

17   attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time

18   of the challenged conduct, in order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S.

19   at 689.  It is the petitioner's burden to overcome the presumption that counsel's actions might be

20   considered sound trial strategy.  *Id.*

21          Ineffective assistance of counsel under *Strickland* requires a showing of deficient

22   performance of counsel resulting in prejudice, "with performance being measured against an

23   'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

24   *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

25   ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

26

13

1    to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

2    5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

3    reasonable professional assistance.  *Id.*

4          The United States Supreme Court has described federal review of a state supreme court's

5    decision on a claim of ineffective assistance of counsel as "doubly deferential."  *Cullen v. Pinholster*,

6    131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)).  The

7    United States Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's

8    performance . . . . through the "deferential lens of § 2254(d).'"  *Id.* at 1403 (internal citations

9    omitted).  Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to

10   the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 131

11   S.Ct. at 1398-1401.

12         **1.  Ground 2(A)**

13         Petitioner alleges that his trial counsel was ineffective for failing to object to jury instructions

14   #6 and #14.  (ECF No. 4, at p. 14).

15         **a.  Jury Instruction #6**

16         As to jury instruction #6, petitioner asserts that the instruction allowed the jury to convict him

17   without proof of the requisite state of mind.  Nevada's conspiracy statute states that a conspiracy

18   occurs when two or more persons conspire to commit a crime.  Nev. Rev. State. 199.480.  Further,

19   each conspirator must possess the requisite intent to commit the crimes performed in furtherance of

20   the conspiracy.  *Bolden v. State*, 121 Nev. 908, 922, 124 P.3d 191, 200-01 (2005), *overruled on other*

21   *grounds by Cortinas v. State*, 195 P.3d 315, 324 (Nev. 2008); *see also Sharma v. State*, 118 Nev.

22   648, 56 P.3d 868 (2002).  Jury instruction #6 discussed co-conspirator liability as follows:

23               Each member of a criminal conspiracy is liable for each act and bound
                 by each declaration of every other member of the conspiracy if the act
24               or the declaration is in furtherance of the object of the conspiracy.

25               The act of one conspirator pursuant to or in furtherance of the common
                 design of the conspiracy is the act of all conspirators.  Every
26

14

1

> conspirator is legally responsible for an act of a co-conspirator that
> follows as one of the probable and natural consequences of the object
> of the conspiracy even if it was not intended as part of the original plan
> and even if the was not present at the time of the commission of such
> act.

2

3

4    (Exhibit 15, at p. 8).  A jury instruction may not be judged in isolation, "but must be considered in

5    the context of the instructions as a whole and the trial record."  *U.S. v. Garcia-Rivera,* 353 F.3d 788,

6    791 (9th Cir. 2003) (citations omitted).  Jurors are presumed to follow the instructions that they are

7    given.  *U.S. v. Olano,* 507 U.S. 725, 740 (1993).  In the instant case, jury instruction #4 instructed the

8    jury that "[t]o be guilty of conspiracy, a defendant must intend to commit, or to aid in the

9    commission of, the specific crime agreed to."  (Exhibit 15, at p. 6).  The jury was properly instructed

10   on the state of mind requirement for criminal conspiracy, and the failure of petitioner's counsel to

11   object to jury instruction #6 does not amount to deficient performance.  Petitioner has not shown that

12   prejudice resulted from his counsel's failure to object to jury instruction #6.  There was abundant

13   evidence of petitioner's guilt, as discussed earlier in this order.  Petitioner has not demonstrated a

14   reasonable probability of a different outcome but for his counsel's failure to object to jury instruction

15   #6.  In addressing this claim, the Nevada Supreme Court ruled as follows:

16

> [A]ppellant claimed that his trial counsel was ineffective for failing to
> object to jury instruction no. 6, which discussed coconspirator liability.
> Appellant claimed that this instruction allowed the jury to convict
> without proof of the necessary state of mind.  Appellant failed to
> demonstrate that he was prejudiced.  Appellant failed to demonstrate a
> reasonable probability of a different outcome had his trial counsel
> objected to the challenged instruction given the overwhelming
> evidence of appellant's guilt, including the testimony of the victim and
> the police officers.  Notably, appellant was found with the victim's
> credit card and her driver's license shortly after the theft and his
> statement to the police that he was holding these items for a friend was
> directly contradicted by the victim.  Therefore, the district court did not
> err in denying this claim.

17

18

19

20

21

22

23   (Exhibit 110, at p. 3) (footnotes omitted).  The factual findings of the state court are presumed

24   correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada

25   Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly

26

established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Petitioner's claim is without merit.

### b. Jury Instruction #14

Petitioner argues that jury instruction #14 improperly minimized the State's burden of proof and "endorsed a conviction on the theory of 'guilt by association.'" (ECF No. 4, at p. 15).  Jury instruction #14 reads as follows:

> You are here to determine the guilt or innocence of the Defendant from the evidence in the case.  You are not called upon to return a verdict as to the guilt or innocense of any other person.  So, if the evidence in the case convinces you beyond a reasonable doubt of the guilt of the Defendant, you should so find, even though you may believe one or more persons are also guilty.

(Exhibit 15, at p. 16).  This jury instruction allowed the jury to properly consider petitioner's presence in the vehicle with Childress and Shefield, along with all other admissible evidence, in reaching its verdict.  Evidence was presented at trial that: (1) petitioner was in physical possession of the victim's credit card and driver's license; and (2) petitioner lied to police when asked about the victim's driver's license.  (Exhibit 18B, at pp. 43-44).  Petitioner has failed to show that his counsel was ineffective for failing to object to jury instruction #14, or that he was prejudiced by the failure to object.  In rejecting petitioner's claim, the Nevada Supreme Court ruled:

> Third, appellant claimed that his trial counsel was ineffective for failing to object to jury instruction no. 14.  Appellant claimed this instruction improperly minimized the State's burden of proof and allowed for conviction due to "guilt by association."  Appellant failed to demonstrate that his trial counsel was deficient or that he was prejudiced.  The challenged instruction informs the jury that it need only be concerned with the guilt or innocence of the defendant, and not the culpability of any other individuals.  Appellant failed to demonstrate how instructing the jury to focus on the guilt or innocence of appellant alone lessened the State's burden of proof.  In addition, the jury was properly instructed on the reasonable doubt standard as required by NRS 175.191.  Therefore, the district court did not err in denying this claim.

16

1    (Exhibit 110, at p. 4) (footnotes omitted).  The factual findings of the state court are presumed

2    correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada

3    Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly

4    established federal law, as determined by the United States Supreme Court, or that the ruling was

5    based on an unreasonable determination of the facts in light of the evidence presented in the state

6    court proceeding.  Habeas relief is denied as to Ground 2(A) in its entirety.

7                          **2.  Ground 2(B)**

8            Petitioner argues that his trial counsel was ineffective for failing to object to the admission of

9    the Luxor casino surveillance videotape.  (ECF No. 4, at pp. 15-16).  Plaintiff alleges that his counsel

10   should have objected to the video because "he did not appear anywhere in the video" and the video

11   "exposed the jury to an abundance of irrelevant and prejudicial evidence."  (ECF No. 4, at p. 15).

12   The Nevada Supreme considered the alleged poor quality of the videotape and ruled as follows:

13               First, appellant claimed that his trial counsel was ineffective for failing
                 to object to the admission of the Luxor casino surveillance videotape.
14               Appellant claimed that the videotape was of such low quality that it
                 should not have been admitted.  Appellant failed to demonstrate that
15               his trial counsel was deficient or that he was prejudiced.  "District
                 courts are vested with considerable discretion in determining the
16               relevance and admissibility of evidence."  Archanian v. State, 122
                 Nev. 1019, 1029, 145 P.3d 1008, 1016 (2006) (citing Crowley v. State,
17               120 Nev. 30, 34, 83 P.3d 282, 286 (2004)).  We conclude that
                 appellant failed to demonstrate that the district court abused its
18               discretion in admitting the tape and that an objection would have been
                 sustained.  Nothing in the record supports appellant's contention that
19               the videotape was of poor quality.  Therefore, the district court did not
                 err in denying this claim.
20
     (Exhibit 110, at pp. 2-3).
21
             Questions about the admissibility of evidence are matters of state law.  *Bashor v. Risley*, 730
22
     F.2d 1228, 1238 (9th Cir. 1983).  The admissibility of evidence is reviewed by a federal habeas court
23
     only if the erroneous ruling rendered the state proceedings so fundamentally unfair as to violate due
24
     process.  *Bueno v. Hallahan*, 988 F.2d 86, 87 (1991).  Where evidence is relevant to an issue in the
25

26
                                           17

case, a federal habeas court need not explore whether a due process violation has occurred.  *See Estelle v. McGuire*, 502 U.S. 62, 70 (1991).

The surveillance videotape depicts Childress and Shefield stealing the victim's purse. (Exhibit 12C, at pp. 100-03).  It is therefore highly probative to show the occurrence of a theft, an element that the prosecution was required to prove.  *See* Nev. Rev. Stat. 205.220.  The videotape is probative to show petitioner's participation in a conspiracy to commit larceny by linking the theft to petitioner's subsequent actions.  (Exhibit 18B, at pp. 43-44) (trial testimony indicating petitioner was found in possession of the victim's credit card and driver's license, and lied to police when asked about the driver's license).  The videotape was probative and relevant to showing the existence of the elements of the crime, and its admission did not violate petitioner's due process rights.  *See Estelle v. McQuire*, 502 U.S. at 70.  Nothing in the record suggests that the videotape prejudiced petitioner. Petitioner has failed to show that his trial counsel was ineffective in failing to object to the admission of the videotape or that he was prejudiced by its admission.

Finally, the factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court denies habeas relief on Ground 2(B) of the petition.

### 3.  Ground 2(C)

Petitioner asserts that his counsel was ineffective for failing to object to his adjudication as a habitual criminal.  (ECF No. 4, at pp. 16-18).  Petitioner contends that his trial counsel failed to object when the district court adjudicated him a habitual criminal on the basis of the State's oral argument without examining his prior convictions for constitutional infirmity.  (*Id.*, at p. 17).  The Nevada Supreme Court considered the state district court's habitual criminal adjudication:

18

1

2

3

4

5

6

7

8

9

> Fifth, appellant claimed that his trial counsel was ineffective for failing to object to his adjudication as a habitual criminal.  Appellant claimed that he was improperly adjudicated as a habitual criminal because he was not notified of the State's intent to seek it in the charging document, the issue of habitual criminality was not presented to the jury, or proven beyond a reasonable doubt.  Appellant failed to demonstrate that his trial counsel was deficient or that he was prejudiced.  The State filed an amended information which noted its intent to seek habitual criminal adjudication.  We have held that a defendant is not entitled to a jury determination of criminal habituality.  See O'Neill v. State, 123 Nev. 9, 153 P.3d 38 (2007); see also Howard v. State, 83 Nev. 53, 422 P.2d 548 (1967) (holding that the Nevada Constitution does not require that status as a habitual criminal be determined by a jury).  The State filed three judgments of conviction in the district court; therefore, appellant failed to demonstrate that there were insufficient convictions to adjudicate him a habitual criminal.  Therefore, the district court did not err in denying this claim.

10

(Exhibit 110, at pp. 5-6).

11

Nevada's habitual criminal statute authorizes the imposition of greater penalties for persons

12

who commit any felony and who have previously been convicted of three or more felonies.  See Nev.

13

Rev. Stat. 207.010(b).  A certified copy of a felony conviction constitutes prima facie evidence of the

14

conviction of a prior felony.  Nev. Rev. Stat. 207.016(5).  "Evidence of a prior conviction does not,

15

on its face, raise a presumption of constitutional infirmity." *Dressler v. State*, 107 Nev. 686, 697-98,

16

819 P.2d 1288, 1295-96 (1991).  In this case, the prosecutor filed certified copies of conviction

17

documents establishing that petitioner had been convicted of at least three prior felonies.  (Exhibit

18

21; Exhibit 22, at p. 4).  The state district court had the documentary evidence it needed for the

19

habitual criminal adjudication at the time of sentencing.  (Exhibit 22, at p.4).  Petitioner has not

20

shown that any of the documentation presented to the sentencing court raised a presumption of

21

constitutional infirmity.  Petitioner has failed to show that his counsel was ineffective for failing to

22

object to the state district court's adjudication of criminal habituality or that he was prejudiced.

23

The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).

24

Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or

25

involved an unreasonable application of, clearly established federal law, as determined by the United

26

States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court denies habeas relief on Ground 2(C) of the petition.

### 4. Ground 2(F)

Petitioner alleges that trial counsel was ineffective for failing to adequately prepare and present the defense theory of the lesser offense of possession of stolen property.  (ECF No. 4, at pp. 19-20).  Petitioner's trial counsel requested a jury instruction on a misdemeanor charge of possession of stolen property, but the request was denied by the trial court.  (Exhibit 7A, at p. 3).  Petitioner has not explained what additional preparation his counsel could have done that would have created a reasonable probability of a different trial outcome.  Petitioner has failed to show that his trial counsel was ineffective in failing to adequately prepare and present the defense theory of a lesser-included offense or that he was prejudiced thereby.  The Nevada Supreme Court ruled on petitioner's claim as follows:

> Fourth, appellant claimed that his trial counsel was ineffective for failing to adequately prepare a defense for the lesser offense of possession of stolen property.  Appellant claimed that he should have only been convicted of the lesser offense of possession of stolen property.  Appellant appeared to argue that possession of stolen property was a lesser included offense to the crime of possession of credit card without the cardholder's consent.  Appellant failed to demonstrate that his trial counsel was deficient or that he was prejudiced.  Appellant's trial counsel requested that the jury be instructed on possession of stolen property, and the request was denied by the district court.  Appellant failed to demonstrate that further preparation would have had a reasonable probability of altering the outcome at trial.  There was overwhelming evidence of appellant's guilt of possession of a credit card without the cardholder's consent, given the testimony of the victim and the police officers, and the fact that appellant was found with the victim's credit card and her driver's license shortly after the theft.  Therefore, the district court did not err in denying this claim.

(Exhibit 110, at pp. 4-5).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The Court denies habeas relief as to Ground 2(F).

**IV.  Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  A petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further.  *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

/ / / / / / / / / / /

/ / / / / / / / / / /

**V.  Conclusion**

1    **IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED**

2  **IN ITS ENTIRETY.**

3    **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

4  **APPEALABILITY.**

5    **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**

6  **ACCORDINGLY.**

7  Dated this 24th day of August, 2012.

8

9  _____

10  UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

22